Leonard Leigh Finz, J.
With ever-increasing frequency the courts are being called upon to decide, as between insurance companies, as between the Motor Vehicle Accident Indemnification Corporation and an insurance company and even as between individuals and an insurance company, whether or not a notice canceling a policy conforms with the requirements of law, and, therefore, was or was not effective.
Some of the questions raised, as in this case, have not heretofore been specifically adjudicated and, therefore, it would seem that a definitive resolution of these questions should be attempted.
This is an action by Nassau Insurance Company for judgment declaring that the policy issued by Lion Insurance Company (Lion) was in effect at the time of the accident involving its insured and that Lion, by virtue of such insurance, should defend the action.
The accident occurred on March 4, 1975. The defendant, Bennie Betton, was employed by Flo-Wood Taxi Corp. (Flo-Wood). The defendant, Calvin A. L. Johnson, the owner and operator of the other vehicle involved in the accident, is alleged to have been covered by a policy issued by Lion for the period covering August 5, 1974 to August 5, 1975. The defendant, Betton, has asserted a claim for personal injuries against Johnson and, by reason of Johnson’s possible lack of insurance, has made a claim against the plaintiff under the unin *983 sured motorists provision of the insurance policy covering Flo-Wood.
By stipulation entered into between the parties prior to the commencement of the trial, it was agreed that the only issue involved herein is whether or not the policy issued by Lion to Johnson was properly canceled.
It is the contention of the plaintiff, inter alla, that:
A. The financial security clause required by section 313 of the Vehicle and Traffic Law did not appear on the notice of cancellation in 12-point type.
B. The cancellation notice did not contain the financial security clause required by section 313 of the Vehicle and Traffic Law.
C. That proof of mailing of the notice of cancellation was insufficient.
D. That Lion failed to provide the 15-day notice required by statute (Insurance Law, § 167-a, subd [1], par [d]) in that the notice of cancellation was mailed on November 14, 1974 to be effective November 29, 1974 at 12:01 a.m.
A. THE REQUIREMENT OF 12-POINT TYPE
The statute (Vehicle and Traffic Law, § 313, subd 1) requires that every notice of termination "shall include in type of which the face shall not be smaller than twelve point a statement that proof of financial security is required to be maintained”. Thus, there are two criteria to be met: (1) that the said statement shall be included in the cancellation notice; and (2) That it be of the size indicated by the statute.
There appears to be no prior decisional authority referring to the size of the type other than Matter of Courtenay v Hults (18 AD2d 1091), and a case decided by this court, Matter of Nassau Ins. Co. (Newsome), (86 Misc 2d 942). In Courtenay, the court indicated that the size of the type was unimportant in the decision since the proceeding was against the Commissioner of Motor Vehicles and did not affect his right to revoke the -registration and license of the petitioner. In Nassau Ins. Co. v Newsome (supra), the expert provided by the petitioner could not, with certainty, testify that the type used there was not of the size indicated by the statute. The doubt, therefore, was resolved in favor of the respondent.
In this case, the financial security statement did not appear on the face of the notice but was printed on the back thereof *984 in type which measured, according to the respective experts, either six or seven points. It was agreed that the word "point” in this connection is a printing term, that there are 72 points to the inch and that 12 points equals one pica. An authoritative volume entitled "General Printing” written by Glen U. Cleeton, Dean Emeritus of the School of Printing Management, Carnegie Institute of Technology, Pittsburgh, Pennsylvania; Charles W. Pitkin, Vice-President and Director of Manufacturing, Doubleday & Company, Inc., New York City and revised by Raymond L. Cornwell, formerly Professor and Coordinator of Graphic Arts, State University of New York College at Oswego and published by McKnight & McKnight, Bloomington, New York, states the following: "The face of the type is the portion which receives the ink and makes an impression on the letter when brought into contact with the paper.”
It was the testimony of Lion’s expert that the language requiring "12-point type” refers to the shank or body upon which the type face is mounted. This contention is rejected. Although the shank can vary, the measurement of the type face cannot. Moreover, by either of the definitions submitted, the type size used to print the statement on the reverse side of the notice was not in conformity with the legislative requirement. The fixing by statute of the specific size of the type removes from this court the issue of whether the type employed in the instant case was of sufficient prominence or size as to give reasonable notice of its import to its reader.
B. SUFFICIENCY OF CANCELLATION NOTICE
In the instant case, a legend was imprinted on the face of the notice, to wit: "RE: Automobile Liability Insurance. See reverse side for statement of New York Law.” This statement, however, was not in 12-point type but a quarter that size and could easily be referred to as fine print. Thus, the placing of the financial security clause required by section 313 of the Vehicle and Traffic Law on the reverse side of the notice, in type far smaller than that prescribed by the statute, without calling attention to it in prominent type cannot conceivably be considered as compliance with the requirements of the law. In this context a parallel can be drawn to the concept expressed in section 2-316 of the Uniform Commercial Code with regard to disclaimers of implied warranties, sometimes referred to as "back-page disclaimers”. The section requires that such dis *985 claimers be conspicuous and the failure to print them in such fashion or to call attention to them in a conspicuous manner has been held not to satisfy the requirements of the Uniform Commercial Code. (Hunt v Perkins Mach. Co., 352 Mass 535; Rite Fabrics v Stafford-Higgins Co., 366 F Supp 1.)
C. THE REQUIREMENT OF PROOF OF MAILING
As to the contention that there was no proof of mailing, Lion produced a witness, one of its employees, who testified that he processed 15 to 20 cancellations per week; that a typist, after typing up the cancellation notice, returned it to the witness, who checked the name and address against the policy, checked the dates involved and inserted the cancellation notice in a window envelope with the name and address of the addressee exposed; that the witness thereafter carried the envelope to the mailroom, ran it through the postage machine and submitted the envelope and enclosure to a clerk of the post office where it was mailed, receiving in return a receipt which he checked against the name and address on the envelope.
This procedure was one which was followed in all cases. Remembering that this accident occurred in March of 1975, it would be absurd to expect that this witness, or any other witness, would remember every name to which a cancellation was posted. The procedure outlined above differs materially from that rejected in Caprino v Nationwide Mut. Ins. Co. (34 AD2d 522).
D. THE REQUIREMENT OF THE 15-DAY NOTICE
Section 167-a (subd [1], par [d]) of the Insurance Law provides: "Payment to the insurer, or to an agent or broker authorized to receive such payment, shall be timely if made within fifteen days after the mailing to the insured of a notice of cancellation for nonpayment of premium.” (L 1974, ch 1072, §§ 2, 3; effAugl, 1974.)
In this regard, section 20 of the General Construction Law states: "In computing any specified period of time from a specified event, the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified period of time is reckoned shall be excluded in making the reckoning.”
In this case, the notice of cancellation was mailed on No *986 vember 14, 1974 effective November 29, 1974. Excluding the date of mailing, this provides 14 days and 1 minute, 23 hours and 59 minutes short. This is similar to the computation made in Johnson v General Mut. Ins. Co. (24 NY2d 42), and cases cited therein, wherein September 11, 1961 to September 24, 1961 at 12:01 a.m., was held to constitute 12 days and 1 minute. It is quite apparent, from the authorities reviewed that 15 days’ notice means 15 times 24 hours.
It is axiomatic that strict compliance with the legislature mandate as articulated in the applicable statutes is required to effectuate the cancellation of an insurance policy. (Messing v Nationwide Ins. Co., 42 AD2d 1030; Government Employees Ins. Co. v Mizell, 36 AD2d 452; Orsini v Nationwide Mut. Ins. Co., 35 AD2d 238, which cited MVAIC v Davidson, 56 Misc 2d 246.) As such, and for the foregoing reasons, judgment must be granted in favor of the plaintiff declaring that Lion’s policy had not been cancelled, that it was in effect on the date of the accident and that it must assume its obligations under its policy.