Harold Hyman J.
Petitioner, Hartford Accident & Indemnity Company (Hartford) moved to "stay arbitration” demanded by its assured, Louis Krumbein, and Miriam Krumbein by notice dated November 11, 1976 and received by it on November 15, 1976.
The demand for arbitration is based upon a policy issued by Hartford to Krumbein, effective from April 15, 1974 to April 15, 1975, and resulting from a three-car collision on November 26, 1974. The "demand” is made pursuant to the "uninsured motorist” provision of the policy afore-mentioned. The facts are simple, and as follows:
One, Michael S. Slakter (Slakter) operating an automobile, insured by Allstate Insurance Company (Allstate) was standing still because of a traffic light at Brooklyn Avenue and Sterling Place, Brooklyn, New York; the Krumbein car, operated by Miriam Krumbein, came to a stop behind Slakter, because of the same traffic light; Mary Paschall (Paschall) operating another automobile struck the Krumbein car in the rear, pushing the Krumbein car into the Slakter car.
At the scene of the accident, the motorists exchanged the usual information which revealed that the Paschall automobile was allegedly insured with United States Fidelity & Guaranty Company (United) under policy number 780ARC 439993.
Miriam Krumbein claims to have been injured. A summons issued by Krumbein’s attorneys against Paschall was served on May 28, 1975 by substituted service, and thereafter proof of service and summons were allegedly duly filed.
On September 29, 1975 United returned the summons to Krumbein contending that the Paschall policy had been canceled effective November 22, 1974 due to "nonpayment” of premium; the notice of cancellation was mailed on November 8, 1974 by United to its assured, Paschall; proof of mailing was evidenced by a U. S. Postal Service certificate of mailing, together with a copy of the notice; the Paschall-United policy had been issued for the period October 19, 1974 to expire October 19, 1975.
*114 Hartford contends, that, United failed to legally cancel its policy, in that United failed to give Paschall 15 days notice of cancellation of "nonpayment of premium” as required by paragraph (d) of subdivision (1) of section 167-a of the Insurance Law; and, that such requirement must be strictly construed against United (citing Matter of Nassau Ins. Co. v Newsome, 86 Misc 2d 942; Messing v Nationwide Mut. Ins. Co., 42 AD2d 1030; Argenzio v Aetna Cas. & Sur. Co., 65 Misc 2d 813).
Hartford further contends that pursuant to subdivision 1 of section 313 of the Vehicle and Traffic Law the statement regarding the requirement of proof of financial security, which must be included on the cancellation notice must be 12 point type. (Nassau Ins. Co. v Lion Ins. Co., 89 Misc 2d 982.) The court believes that on examination this latter contention can be disposed of as being unsupportable of application to the notice of cancellation involved herein.
United, in response to Hartford’s contention of the cancellation notice requirement of 15 days, contends that it is subdivision 1 of section 313 of the Vehicle and Traffic Law, which actually applies and, which requires only 10 days notice of cancellation for "nonpayment of premium” on motor vehicles, not paragraph (d) of subdivision (1) of section 167-a of the Insurance Law.
There has been much controversy on the precise issue above presented herein.
Paragraph (d) of subdivision (1) of section 167-a of the Insurance Law provides: "(d) 'Nonpayment of premium’ means the failure of the named insured to discharge any obligation in connection with the payment of premiums on a policy of insurance * * * Payment * * * shall be timely if made within fifteen days after the mailing to the insured of a notice of cancellation for nonpayment of premium”.
Possibly contrary to what other Justices may have held, this court construes the provision of paragraph (d) of subdivision (1) of section 167-a of the Insurance Law not to be a 15-day cancellation notice directive, but rather that the quoted section does not require a notice of cancellation be given 15 days or any number of days before becoming effective. That provision merely grants to the insured the right to pay the premium "within fifteen days after the mailing to the insured of a notice of cancellation for nonpayment of premium”. Strictly interpreted, this means that for a period of 15 days after *115 mailing, the policy still exists for all purposes by granting to the insured a "grace period” within which to pay same; and, that regardless of the date of the notice, and regardless of the date stated as the cancellation date, until 15 days have fully expired the policy validly exists for all purposes. On the other hand, subdivision 1 of section 313 of the Vehicle and Traffic Law is very specific and definitively requires a 10-day notice.
Petitioner’s belief that the Paschall policy was under the Assigned Risk Plan, and that the plan requires 20 days’ notice of cancellation, because of "nonpayment of premium” has been otherwise decided. (Matter of Amer. Empire Ins. Co. [Travelers Ins. Co.], 56 AD2d 845.) The latter court held that the assigned risk plan does not require 20 days’ notice and that 10 days’ notice is sufficient (citing, Vehicle and Traffic Law, § 313; NY Assigned Risk Plan, § 18, sub 4).
This court holds that whether it be under the assigned risk plan or not, so long as it applies to a "covered” motor vehicle 10 days’ notice of cancellation for "nonpayment of premium” is, and in this case was, sufficient and, that the United policy of Paschall was therefore duly canceled, within the purview of the applicable statute which, as previously stated, speaks definitively of a 10-day notice requirement. (Vehicle and Traffic Law, § 313, subd 1.)
The petition is dismissed with taxable costs and disbursements payable to United only; and, petitioner, Hartford, is directed to proceed to arbitration in accordance with the demand made therefor.