253 N.J. Super. 34 (1992)
600 A.2d 1222
809-811 WASHINGTON STREET ASSOCIATES, PLAINTIFF-APPELLANT,
v.
DAVID GREGO, BRANKO & HELEN ILIJIC, MARIA COFINO AND JOSO DADIC, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 8, 1991.
Decided January 9, 1992.
*37 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Kenneth D. McPherson, Jr. argued the cause for appellant (Waters, McPherson, McNeill, attorneys; Kenneth D. McPherson, Jr. of counsel; James P. Bruno and Todd Schaper, on the brief).
Ira Karasick, argued the cause for respondents Grego, Ilijic and Dadic.
Maureen Schweitzer Parrott argued the cause for respondent Cofino.
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to interpret various provisions of the Anti-Eviction Act and the regulations adopted thereunder which govern condominium conversions.
*38 Plaintiff was the owner of a twenty-two unit apartment building located in Hoboken and defendants were tenants in four of the units.[1] On December 31, 1986, plaintiff obtained an order of registration from the Department of Community Affairs (DCA) accepting its public offering statement (POS) in accordance with the provisions of the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -42 (PREDFDA), and on February 11, 1987, DCA registered plaintiff's first amendment to its POS. On February 11, 1987, plaintiff delivered a copy of its POS and its full plan of condominium conversion (full plan of conversion) prepared pursuant to the Anti-Eviction Act, N.J.S.A. 2A:18-61.8, together with its notice of intention to convert to condominium ownership (notice of intention), to the clerk of the City of Hoboken.
Later in February 1987, plaintiff served the notice of intention upon its tenants including the defendants. The POS, which also constituted plaintiff's full plan of conversion, the first amendment thereto, and DCA's regulations governing condominium conversions, N.J.A.C. 5:24-1.1 to -1.12, all accompanied the notice and were incorporated therein. The notice advised each of the tenants of their "exclusive right for a period of ninety (90) days after your receipt of this Notice and attachments, to purchase your apartment unit." The notice stated that "[t]he purchase price of your Apartment Unit is included in the Exhibit entitled `Purchase Price and Estimated Common Charges' which is attached to the First Amendment to the Plan." The notice also advised the tenants that "an owner of an apartment building who is converting from the rental market to the condominium form of ownership has the right, upon giving of three (3) years prior notice, to remove existing tenants from the converted apartment building." The notice further advised the tenants that if they were evicted pursuant to a condominium conversion, they would have certain additional *39 rights, including assistance in securing comparable housing and a moving expense allowance from the landlord. Defendants did not exercise their right to purchase their units within the ninety day period allowed by the notice.
In April of 1987, plaintiff served each of the defendants with a notice to quit and for delivery of possession (notice of eviction) which stated that their leases would be terminated as of April 30, 1990, because plaintiff was converting the apartment to condominium ownership in accordance with the February 11, 1987 notice of intention.
Defendants did not surrender possession of the premises by April 30, 1990, as demanded in the notice of eviction, and on May 1, 1990, plaintiff filed summary dispossess actions against them. The complaints were subsequently consolidated for trial.
The trial court issued a written decision on October 22, 1990, revised by a memorandum opinion issued on February 6, 1991, which concluded that plaintiff had failed to comply with various provisions of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to 2A:18-61.12, and its implementing regulations, and that the court therefore lacked jurisdiction to proceed with its complaints. Accordingly, the court entered an order dismissing the complaints. More specifically, the court concluded that the notice of eviction was received by defendant Grego precisely sixty days after he received the notice of intention and therefore was served prematurely, and that plaintiff's complaints had been filed prior to the termination of defendants' tenancies and therefore also were premature. The court also concluded that plaintiff's full plan of conversion, which is required to satisfy the provisions of the Anti-Eviction Act, could not be presented in the same document as its POS, which is required to satisfy the requirements of the PREDFDA. In addition, the court identified two deficiencies in plaintiff's February 11, 1987 notice of intention and numerous deficiencies in its full plan of conversion.
*40 We conclude that plaintiff complied in all respects with the requirements of the Anti-Eviction Act and its implementing regulations. Therefore, we reverse.

I
Before addressing the Special Civil Part's reasons for concluding that plaintiff failed to comply with certain provisions of the Anti-Eviction Act and its implementing regulations and that the court therefore lacked jurisdiction, we first consider two preliminary procedural arguments presented by plaintiff.

A
Plaintiff argues that the Special Civil Part lacked jurisdiction to review the form of its full plan of conversion, because DCA possesses exclusive jurisdiction to review the form of condominium conversion plans and DCA approved plaintiff's plan before it was sent to defendants.
The Legislature has assigned the responsibility to DCA to adopt regulations implementing both PREDFDA and the Anti-Eviction Act. N.J.S.A. 45:22A-35; N.J.S.A. 2A:18-61.12. DCA has discharged these responsibilities by the adoption under the authority of the PREDFDA of N.J.A.C. 5:26-1 to -11.11 and the adoption under the authority of the Anti-Eviction Act of N.J.A.C. 5:24-1.1 to -1.12. The subjects addressed by DCA's regulations include the contents of both public offering statements required under the PREDFDA, N.J.A.C. 5:26-4.2, and full plans of conversion required under the Anti-Eviction Act, N.J.A.C. 5:24-1.5. DCA has the additional responsibility under PREDFDA to review and approve a developer's application for registration of a planned real estate development, which must include a POS. N.J.S.A. 45:22A-26 to -30. Thus, DCA must find that "[t]he public offering statement requirements of this act have been satisfied," N.J.S.A. 45:22A-29(e), before it may register the development, N.J.S.A. 45:22A-30(b). However, although the Anti-Eviction Act authorizes DCA to *41 adopt regulations prescribing the procedures landlords must follow in informing tenants of their "rights and responsibilities" under the Act and "the plans and proposals of landlords which may affect any tenant in order to maximize tenants' ability to exercise rights provided under this act," N.J.S.A. 2A:18-61.12, which includes the authority to prescribe the contents of full plans of conversion, the Anti-Eviction Act does not authorize DCA to review and pass upon the adequacy of a proposed notice of intention or a full plan of conversion.
Plaintiff elected to satisfy its obligations under the PREDFDA and Anti-Eviction Act by a single document, entitled "Public Offering Statement and Full Plan of Condominium Conversion." Plaintiff submitted this document to DCA as part of its application for registration. DCA approved plaintiff's application by a letter dated December 31, 1986, which stated in pertinent part:
Enclosed herewith please find Order of Registration in the above matter. It is issued pursuant to the authority of N.J.S.A. 45:22A-21 et seq.
Thus, it is clear on the face of DCA's letter to plaintiff that DCA's approval was limited to plaintiff's compliance with the provisions of the PREDFDA and that DCA did not express any opinion regarding plaintiff's compliance with the Anti-Eviction Act. Furthermore, N.J.A.C. 5:26-9.2 expressly states that compliance with the requirements of PREDFDA does not relieve a landlord of complying with the Anti-Eviction Act and the regulations promulgated thereunder. In addition, this court has recognized in a series of decisions that the Special Civil Part has the responsibility in a summary dispossess action arising out of a condominium conversion to determine the landlord's compliance with the applicable provisions of the Anti-Eviction Act. See, e.g., Sibig & Co. v. Santos, 244 N.J. Super. 366, 582 A.2d 840 (App.Div. 1990); Riotto v. Van Houten, 235 N.J. Super. 177, 561 A.2d 1168 (App.Div. 1989), aff'g 235 N.J. Super. 162, 561 A.2d 691 (Law Div. 1988). Therefore, DCA's registration of plaintiff's POS did not preclude the Special Civil Part from reviewing the form of plaintiff's combined *42 POS and full plan of conversion to determine its conformity with the Anti-Eviction Act and its implementing regulations.[2]

B
Plaintiff also argues that defendants lacked standing to challenge the conformity of plaintiff's plan of conversion with the applicable statutory and regulatory requirements because defendants had no intention to purchase their units and therefore were not adversely affected by any deficiencies in the plan.
However, it is firmly established that compliance with the statutory prerequisites to the institution of a summary dispossession action is jurisdictional. Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 124-25, 228 A.2d 674 (1967); Sacks Realty Co. v. Batch, 248 N.J. Super. 424, 591 A.2d 660 (App.Div. 1991); Riotto v. Van Houten, supra; RWB Newton Assocs. v. Gunn, 224 N.J. Super. 704, 709, 541 A.2d 280 (App. Div. 1988). The trial court concluded that plaintiff failed to comply with certain express requirements of the Anti-Eviction Act, including the requirement of N.J.S.A. 2A:18-61.8 that a tenant be given notice of his or her right to purchase ownership in the premises at a specified price. Since compliance with these requirements is a jurisdictional prerequisite to the institution of a summary dispossess action, defendants have standing to assert that plaintiff violated the Anti-Eviction Act without showing that they were adversely affected by those alleged violations.
The trial court also concluded that plaintiff's full plan of conversion was inconsistent in various respects with the DCA's regulations prescribing the contents of this document. Our prior decisions have not gone so far as to say that any deviation *43 between the requirements of DCA's regulations and the contents of a conversion plan, no matter how insignificant the deviation may be and regardless of whether it has any adverse impact upon the tenants, deprives the Special Civil Part of jurisdiction and requires dismissal of a complaint for summary dispossession. In any event, we find it is unnecessary to decide whether a violation of DCA's regulations governing the contents of full plans of conversion would be a jurisdictional defect which defendants would have standing to raise even if they were not adversely affected because plaintiff's conversion plan complies with all the applicable DCA regulations.

II
We begin our discussion of plaintiff's compliance with the Anti-Eviction Act and its implementing regulations by outlining briefly the procedural steps which a landlord must follow in order to evict a tenant under N.J.S.A. 2A:18-61.1(k) based on a condominium conversion. First, a converting landlord must give the tenants a notice of intention to convert (notice of intention) and a copy of the full plan of conversion. N.J.S.A. 2A:18-61.8. This must include notice of the tenants' right "to purchase ownership in the premises at a specified price in accordance with this section, and their other rights as tenants under this act in relation to the conversion." Ibid. A current tenant's right to purchase his own unit is exclusive for the first ninety days following the notice of intention unless the tenant waives this right. Ibid. In addition, the landlord must give the tenants three years' notice of its intention to file a dispossession action (notice of eviction), N.J.S.A. 2A:18-61.2(g), which notice shall not be served until sixty days after the landlord has given the notice of intention required by N.J.S.A. 2A:18-61.8.

A
The trial court held that the requirement of N.J.S.A. 2A:18-61.8 and N.J.A.C. 5:24-1.4(a)(1) that the notice of intention *44 include notice to the tenants of "their right to purchase ownership in the premises at a specified price" may not be satisfied by a notice which incorporates another document by reference.
The notice of intention sent to each of the defendants stated:
[Y]ou are hereby notified of your exclusive right for a period of ninety (90) days after your receipt of this Notice and attachments, to purchase your apartment unit ("Apartment Unit") in Washington Street Apartments, A Condominium (the "Condominium"). During said ninety (90) days, your apartment Unit shall not be shown to a third party unless you have waived in writing your right to purchase it. The purchase price of your Apartment Unit is included in the Exhibit entitled "Purchase Price and Estimated Common Charges" which is attached to the First Amendment to the Plan.
The exhibit incorporated by reference in the notice contained a list of the unit number of each apartment in the building, and the "as is" price, the upgraded price and monthly assessment for each unit. None of the defendants testified that they had any difficulty ascertaining the prices at which plaintiff was offering to sell their apartments to them.
Nothing in N.J.S.A. 2A:18-61.8 or N.J.A.C. 5:24-1.4(a)(1) precludes incorporation by reference of other documents in a notice of intention. Indeed, some use of incorporation by reference is probably helpful in preventing the notice of intention from becoming too long and complicated. Thus, N.J.S.A. 2A:18-61.8 requires the notice of intention to include a notice of the tenants' "other rights as tenants under this act in relation to the conversion ... to a condominium ... ownership." A full statement of all the tenants' rights under the applicable statute and implementing regulations would require an extremely lengthy document. Therefore, it is consistent with the language of N.J.S.A. 2A:18-61.8 and N.J.A.C. 5:24-1.4(a)(1), and the underlying objectives of the Anti-Eviction Act relating to condominium conversions, for the notice of intention to be a brief, easily understood summary of the tenants' rights, which are set forth in greater detail in the accompanying full plan of conversion and DCA regulations incorporated by reference in the notice. See Wendell A. Smith, New Jersey Condominium Law: A Practical Guide to Condominium and Other Common *45 Interest Projects, App. 23 at 688-89 (1990). Furthermore, we are satisfied that plaintiff's notice of intention clearly informed defendants of their right to purchase their units including the prices at which the units were being offered.

B
The trial court found that "Mr. Grego received his notice of termination on the 60th day after receiving the notice of intent to convert," which the court concluded was contrary to the mandate of N.J.S.A. 2A:18-61.8 that a landlord who intends to convert "shall give the tenants 60 days' notice of his intention to convert and full plan of the conversion prior to serving [the] notice, provided for in [N.J.S.A. 2A:18-61.2(g)]." N.J.A.C. 5:24-1.5(e) implements this statutory directive by providing that "[t]he owner must wait 60 days after serving the `notice of intent' to convert and `the full plan of conversion' before giving the three-year notice."
On February 11, 1987, plaintiff mailed the notice of intention to Grego, which he received on February 13, 1987. On April 13, 1987, plaintiff mailed the notice of eviction to Grego, which he received on April 14, 1987.
The usual rule is that service by mail is deemed complete upon mailing rather than upon receipt. Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 172-77, 518 A.2d 758 (App. Div. 1986). Applying this rule, a period of sixty-one days elapsed between plaintiff's mailing of the notice of intention on February 11, 1987 and its mailing of the notice of eviction on April 13, 1987. And even if receipt were required for effective service of a notice under the Anti-Eviction Act, a period of sixty days elapsed between Grego's receipt of the notice of intention on February 13, 1987 and his receipt of the notice to eviction on April 14, 1987, which would satisfy the requirement of N.J.S.A. 2A:18-61.8 and N.J.A.C. 5:24-1.5(e) that the notice of intention be given 60 days prior to service of the notice of eviction. Cf. DeLisle v. City of Camden, 67 N.J. Super. 587, *46 589-90, 171 A.2d 346 (App.Div. 1961) ("when a legal requirement fixes a number of days from a date or an event for the doing of an act the computation is made by excluding the first date and including the last."); see also Kilmurray v. Gilfert, 10 N.J. 435, 439, 91 A.2d 865 (1952); Day v. Hall, 12 N.J.L. 203, 205 (Sup.Ct. 1831).

C
The trial court also held that it lacked jurisdiction because the complaints were filed prior to the expiration of defendants' tenancies.
Plaintiff's notice of eviction stated that defendants' tenancies would terminate as of April 30, 1990. Those notices were all served in April 1987, the last notice having been served on April 29, 1987. Since the complaints for summary dispossession were not filed until May 1, 1990, plaintiff clearly complied with the requirement of N.J.S.A. 2A:18-61.2(g) that three years' notice be given prior to the institution of the action. Nevertheless, the trial court concluded that the tenancy could not terminate on April 30, 1990, because that was not an anniversary date of the month-to-month tenancy and consequently that the earliest date on which the tenancy could expire was May 1, 1990. The court then concluded that the dispossess action, which was filed on the same date as the termination of the tenancy, was filed prematurely and that the court did not acquire jurisdiction over plaintiff's complaint.
We find it unnecessary to decide whether N.J.S.A. 2A:18-61.2(g) would allow the termination of a month-to-month tenancy in the middle of a month, provided the landlord gave the required three years' notice of eviction, because plaintiff accepted rent from each of the defendants for the full month of April, thus extending the date of termination of their tenancies from April 30, 1990 to May 1, 1990. See Harry's Village v. Egg *47 Harbor Township, 89 N.J. 576, 585-87, 446 A.2d 862 (1982).[3] However, this does not justify the trial court's conclusion that plaintiff's complaints were filed prior to the expiration of defendants' tenancies. The precise moment at which defendants' tenancies terminated was midnight on May 1, 1990, that is, at the very beginning of that day. Steffens v. Earl, 40 N.J.L. 128, 136 (Sup.Ct. 1878); PMS Realty Co. v. Guarino, 126 N.J. Super. 134, 136-37, 312 A.2d 898 (Cty.Dist.Ct. 1973); see also S.D.G. v. Inventory Control Co., 178 N.J. Super. 411, 415, 429 A.2d 394 (App.Div. 1981). Since it may be reasonably assumed that plaintiff's complaints were not filed precisely at midnight, we are satisfied that the complaints were not filed until after the termination of defendants' tenancies and thus were not premature. This conclusion makes it unnecessary for us to decide whether the trial court would have lacked jurisdiction if plaintiff's complaints had been filed prior to the expiration of defendants' tenancies.

D
The trial court found that plaintiff failed to include a summary of tenants' rights approved by DCA with the notice of intention, as required by N.J.A.C. 5:24-1.4(a)(3). However, this regulation clearly indicates that if the notice of intention is accompanied by a copy of DCA's regulations governing condominium conversions, an approved summary of tenants' rights is not required:

*48 A copy of this subchapter or any statement of tenants' rights in relation to conversion subsequently approved for this purpose by the Department of Community Affairs. (Emphasis added).
The notice of intention states that "[t]he regulations are included as Exhibit 8 in the Plan." None of the defendants asserted that the materials they received with the notice of intention failed to include DCA's regulations governing condominium conversions. Therefore, plaintiff's notice of intention complied with N.J.A.C. 5:24-1.4(a)(3).

E
The trial court identified numerous deficiencies in plaintiff's full plan of conversion. Defendants only urged two of these alleged deficiencies. The rest were identified sua sponte by the trial court, most by one sentence conclusionary statements. Defendants' appellate brief has not undertaken to defend the trial court's conclusions regarding the purported deficiencies in plaintiff's conversion plan. Nevertheless, we have reviewed all of those deficiencies and find them to be clearly lacking in substance. Only brief comment regarding a few of the alleged deficiencies is necessary.
The trial court held that it was improper for plaintiff to present its full plan of conversion as part of the same document as its POS. However, we find nothing in the PREDFDA or Anti-Eviction Act or their implementing regulations which precludes such a combined document. Indeed, this is apparently a fairly common practice. The leading commentary on New Jersey condominium law states that "the contents of the full plan of conversion and the POS overlap in many particulars, and they are frequently combined into one document, the `offering plan'." Smith, supra, § 13.4 at 232.
The trial court also held that plaintiff's full plan of conversion failed to comply with the requirement of N.J.A.C. 5:24-1.5(b)(6) that it contain "[a] statement as to whether a title company, licensed to do business in New Jersey, attests to the *49 validity of the condominium and agrees to insure title to the individual units." Plaintiff's conversion plan addresses this requirement by the following statement:
Each purchaser is entitled to use any title insurance company he chooses to examine Sponsor's title to the unit to be conveyed. Sponsor therefore does not offer any proposed certificates of title or title insurance to any purchaser without charge. The sponsor, however, remains obligated to convey marketable title to every Purchaser in accordance with the terms of Subscription and Purchase Agreement.
....
A sample Unit Owner's title insurance policy is included as Exhibit 9 to this Public Offering Statement. This sample policy is submitted for information purposes only. Sponsor will not offer title insurance to prospective purchasers. Title insurance shall be the sole responsibility of the Purchaser.
We are satisfied that this statement complies with N.J.A.C. 5:24-1.5(b)(6). This regulation does not require the sponsor to obtain an attestation by a title insurer to the validity of the condominium or to offer title insurance to purchasers of included units but only to state "whether" such a commitment has been secured from a title insurer. The quoted statement clearly indicates that plaintiff has not obtained any commitment from a title insurer.
Finally, our review of plaintiff's plan of conversion discloses that, contrary to the findings of the trial court, it does contain "[a] legal description of the property to be converted together with a map showing the site plan and typical floor plan," N.J.A.C. 5:24-1.5(b)(1), an adequate copy of the proposed master deed,[4]N.J.A.C. 5:24-1.5(b)(4), a statement that a clear marketable title will be given, N.J.A.C. 5:24-1.5(b)(5), a sufficient engineering survey, N.J.A.C. 5:24-1.5(b)(8), a sufficient audited statement of expenses on the property being offered, N.J.A.C. 5:24-1.5(b)(9), disclosure of any agreements that will be binding on the condominium, N.J.A.C. 5:24-1.5(b)(10), a statement that all deposit moneys will be kept in trust until completion of the transaction, N.J.A.C. 5:24-1.5(b)(11), the name *50 and address of the escrow agent, ibid., a sufficient budget for the first year of operation of the condominium, N.J.A.C. 5:24-1.5(b)(12), and a statement of the seller's name and address, and the form, date and jurisdiction of the organization, N.J.A.C. 5:24-1.5(b)(14).

III
Plaintiff urges us to exercise our original jurisdiction and to declare that a Hoboken ordinance prohibiting condominium conversions is preempted by state legislation and therefore invalid. Plaintiff also asks us to declare that the Condominium Conversion Moratorium Act, enacted by chapter 45 of the Laws of 1991, "cannot be constitutionally applied to its condominium conversion because its right to possession of defendants' units were vested before the moratorium was enacted."
However, the trial court did not address either of these arguments, and they have not been adequately briefed on this appeal. It is of course firmly established that appellate courts generally will decline to consider issues not properly presented to the trial court. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234-35, 300 A.2d 142 (1973). Plaintiff has not demonstrated the kind of extraordinary circumstances which might lead us to depart from this general rule. We also note that a claim that legislation is unconstitutional as applied, which is the nature of plaintiff's constitutional attack upon the Condominium Conversion Moratorium Act, is inherently factual, and therefore cannot be addressed without affording the parties an opportunity to develop an adequate record. See Keystone Coal Assoc. v. DeBenedictis, 480 U.S. 470, 493-95, 107 S.Ct. 1232, 1246-47, 94 L.Ed.2d 472, 493-95 (1987); Edgewater Investment Assocs. v. Borough of Edgewater, 103 N.J. 227, 240-43, 510 A.2d 1178 (1986).
Accordingly, we reverse the order dismissing plaintiff's complaints and remand for further proceedings in conformity with this opinion.
NOTES
[1] We were advised at oral argument that all but the four units occupied by defendants have been sold as condominiums.
[2] The Legislature may wish to consider amending the Anti-Eviction Act to authorize DCA to review plans of condominium conversion to determine their compliance with that legislation as well as PREDFDA.
[3] The trial court ruling in Amato v. Pelligrini, 246 N.J. Super. 34, 39-40, 586 A.2d 856 (Law Div. 1990) that the termination date must be postponed until the first day of the following month, in this case June 1, 1990, is inconsistent with Harry's Village and is therefore overruled. Insofar as the trial court's decision in Market Dundee Corp. v. Jaramillo, 244 N.J. Super. 385, 582 A.2d 850 (Law Div. 1990) indicates that a landlord's failure to give notice of the termination on an anniversary date completely invalidates a notice of eviction, rather than making the termination effective on the next anniversary date in accordance with Harry's Village, it too is overruled.
[4] Although not disclosed by the record before us, we were advised at oral argument that the master deed was recorded in August 1987.