707 A.2d 1367

DIANA FIDUCCIA AND JOHN FIDUCCIA, PLAINTIFFS–RESPONDENTS, v. INTERCONTINENTAL RESTAURANTEURS, INC., INTERCONTINENTAL RESTAURANTEURS, INC., LEMMAR EATERIES, INC., AND MATEO TESTINO, DEFENDANT, THIRD–PARTY PLAINTIFFS, v. ROYAL INSURANCE COMPANY, THIRD–PARTY DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 10, 1998—Decided March 20, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Stephen B. Fenster,* argued the cause for appellant (*Gallo Geffner Fenster,* attorneys; *Mr. Fenster,* of counsel; *Valerie A. Vladyka,* on the brief).

*Seth D. Bader,* argued the cause for respondents (*Margo E. Bader,* attorney; *Mr. Bader,* of counsel and on the brief).

The opinion of the court was delivered by

CARCHMAN, J.S.C. (temporarily assigned).

This appeal requires us to determine the length of a "day" as the term is used in the cancellation provisions of the Insurance Premium Finance Company Act (the Act), *N.J.S.A.* 17:16D–1 to – 16. We hold that a "day" consists of twenty-four hours and not one minute as prescribed by the language of the insurance policy in question, and the coverage extended until the stroke of midnight at the end of the third day.

The facts are not in dispute. Third-party defendant Newark Insurance Company (Newark) [1] issued a Commercial General Liability Policy to defendant Intercontinental Restauranteurs, Inc. effective for one year commencing January 21, 1992. The policy was financed through Crossland Premium Funding (Crossland) with monthly installments due in the amount of $1,167.66. The first payment was due on February 21, 1992. Under the terms of the financing agreement, Crossland was appointed as attorney-in-fact on behalf of defendant to cancel the policy in the event of non-payment of the premium. Defendant defaulted on the first payment, and on March 2, 1992, a Notice of Intent to Cancel the policy was forwarded to defendant. Defendant was given fifteen days to cure the default or the policy would be canceled effective March 18, 1992. No payment was forthcoming, so on March 18, 1992, Newark mailed a Notice of Cancellation to defendant advis-

---

[1] Newark was improperly impleaded as Royal Insurance Company.

ing that the policy was effectively canceled at 12:01 a.m. on March 18, 1992.[2]

On March 21, 1992, at approximately 10:00 p.m., plaintiff Diana Fiduccia was injured when she slipped and fell at Carina's Italian Family Restaurant in Kinnelon. Carina's was operated on property owned by defendant. Newark disclaimed coverage asserting that its policy was canceled effective 12:01 a.m. on March 21, some twenty-two hours before the accident occurred.

Newark relies on the provisions of *N.J.S.A.* 17:16D–13 which provides, in relevant part:

> After expiration of such 10–day period [after the filing of the Notice of Intent to Cancel], the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation.... *The effective date of such cancellation shall not be earlier than 3 days after the date of mailing of such notice to the insured and to the insurance agent or insurance broker.*
> [*N.J.S.A.* 17:16D–13(c) (emphasis added) ].

Newark asserts that the provisions of its policy read in conformity with the statute allow cancellation at 12:01 a.m. on the third day after notice.[3] On a motion for summary judgment, the motion judge concluded that the notice requirement included the entire third day, not simply one minute of the third day. We agree and affirm.

We have previously discussed the function and import of the notice of cancellation and the requisite three-day provision in *Wright v. Rumble,* 194 *N.J.Super.* 337, 476 *A.*2d 1250 (App.Div. 1984), where we observed:

> The "notice of cancellation" is given after the insured has failed to cure the default. He already knows from the "notice of intent to cancel" that the finance

---

[2] Plaintiff raises a factual issue as to whether Newark established that the notices were sent. For the purposes of our decision, we will assume, as did the motion judge, that the notices were sent in a timely manner.

[3] Newark's Notice of Cancellation indicated that the policy would be canceled on March 18, 1992. Newark concedes that this was an error and the earliest date of cancellation was March 21, 1992. The issue in dispute is not the *date* of cancellation but the *time* of cancellation.

company may now cancel at any time. The notice of cancellation advises the insured that the finance company cancelled the policy. Its function is simply to alert the insured that he is no longer insured by the policy. Whenever he receives it, the insured can no longer prevent cancellation if the notice of intent to cancel was adequate.

In order to prevent terminating coverage before the insured has a chance to be aware of cancellation, the statute provides that "cancellation shall not be earlier than 3 days after the date of mailing of [the notice of cancellation]." This allows time for mail delivery of the notice. Thus no matter when the finance company requests the insurer to cancel, the statute establishes the effective date of cancellation as three days after the finance company mails notice of cancellation to the insured unless the insurer cancels at a later date.

[*Id.* at 342–43, 476 A.2d 1250].

All parties agree that consistent with well established principles, the day in dispute is the third day—March 21, 1992—after the day of mailing—March 18, 1992. *809–811 Washington Street Associates v. Grego,* 253 *N.J.Super.* 34, 46, 600 *A.*2d 1222 (App.Div.1992); *De Lisle v. City of Camden,* 67 *N.J.Super.* 587, 589–90, 171 *A.*2d 346 (App.Div.1961); *R.* 1:3–1 ("In computing any period of time fixed by rule or court order, the day of the act or event from which the designated period begins to run is not to be included.").

Although no reported New Jersey case has addressed the *time* of day that the cancellation is effective, other jurisdictions and legal commentators have spoken to the issue. Of those jurisdictions, the general rule where no time is specified in the notice is that only whole days, not fractions thereof, are considered. *Conley v. Ratayzcak,* 92 *Ill.App.*3d 29, 46 *Ill.Dec.* 616, 620, 414 *N.E.*2d 500, 504 (1981); *Lowe v. O'Meara,* 482 *F.*2d 1373, 1375 (5th Cir.1973) (holding that an attempt to cancel an insurance policy at 12:01 a.m. is of no effect because it conflicts with Louisiana law which provides that, in computation of time, only whole days, not fractions thereof, are considered.); *cf. State Compensation Insurance Fund v. Building Systems, Inc.,* 713 *P.*2d 940, 941 (Colo.Ct. App.1985) (failure of insurer to specify exact time of cancellation on cancellation date resulted in coverage being in effect until midnight on the cancellation date).

Even where a time is specified, some jurisdictions reject such time where the effect is to reduce the statutorily mandated

cancellation period. In *Johnson v. General Mutual Insurance Co.*, 26 *A.D.*2d 602, 271 *N.Y.S.2d* 428 (1966), *modified on other grounds*, 24 *N.Y.*2d 42, 298 *N.Y.S.*2d 937, 246 *N.E.*2d 713 (1969), the insured defaulted on an insurance premium financing agreement. The New York cancellation statute required thirteen days notice in case of cancellation by mail. The notice of cancellation provided for cancellation at 12:01 a.m. on the thirteenth day. The court rejected the notice, holding that:

> [t]he notice [ ] was untimely and thus of no effect. The notice [ ] allowed but 12 full days and one minute of the thirteenth day, as against the requirement of 13 days' notice in case of service by mail.
>
> [*Id.* 271 *N.Y.S.*2d at 430–31]

*Accord Valley Forge Insurance Co. v. Concord Group Insurance Co.*, 623 *A.*2d 163, 164 (Me.1993).

Similarly, in *Northwestern National Casualty Company v. Thomas*, 248 *Ark.* 989, 455 *S.W.*2d 87, 88 (1970), the automobile insurance policy itself contained a clause which provided: "this policy may be cancelled by the company by mailing to the insured ... written notice stating when not less than ten days thereafter such cancellation shall be effective." Notice was sent on November 26 notifying the insured that the cancellation would be effective on December 6 at 12:01 a.m. The Supreme Court of Arkansas, consistent with *Johnson*, held that the termination at 12:01 a.m. on the tenth day effectively reduced the grace period, and thus an accident occurring on December 6 at 5:00 p.m. was covered. *Id.* 455 *S.W.*2d at 89.

Finally, in *Nassau Insurance Co. v. Lion Insurance Co.*, 89 *Misc.*2d 982, 393 *N.Y.S.2d* 280 (N.Y.Sup.Ct.1977), the court commented on a fifteen day statutory notice that included a cancellation provision effective at 12:01 a.m.. The court noted:

> Excluding the date of mailing, this provides fourteen (14) days and one (1) minute, twenty-three (23) hours and fifty-nine (59) minutes short.... It is quite apparent, ... that fifteen days notice means fifteen times twenty-four hours.[4]

---

[4] The concept and common understanding of a "day" containing twenty-four hours is one known to both lexicographers, *e.g.*, "day" means "the mean solar

*[Id.* 393 *N.Y.S.2d* at 283]

*And see Couch on Insurance* 3d, § 32:49 (West Group rev.1995) (noting that "[w]here a policy reads 'five days from the receipt of notice,' this means midnight of the last day, even though the policy itself runs from noon to noon, so that cancellation will take effect in five days after receipt of the notice, although noon of the fourth is specified as the expiration of the time").

We perceive no reason why defendant should be permitted to limit the third day of the cancellation period to one minute. Yet such is, indeed, the effect of the 12:01 a.m. cancellation time. The practical impact of such limitation is apparent. A notice mailed on Friday and not reaching an insured until Monday and containing a 12:01 a.m. cancellation provision would result in the insured not receiving the notice until after the policy has been canceled. The legislative purposes for a three-day cancellation notice which we identified in *Wright* would be meaningless if the insurer were permitted to unilaterally reduce the time.

In a different context involving the calculation of age, we stressed the need for uniformity in calculating time periods, *Patterson v. Monmouth Regional High School Bd. of Educ.*, 222 *N.J.Super.* 448, 454, 537 *A.*2d 696 (App.Div.1987), *certif. denied,* 110 *N.J.* 183, 540 *A.*2d 180 (1988). Such a consideration applies here as well. The legislative determination to provide an insured with three full days notice of cancellation of an insurance policy cannot be negated by an arbitrary determination of the carrier setting forth a cancellation time which reduces the statutory protection. That is the impact and effect of this defendant's notice. It is a result that is contrary to the statute and will not be sanctioned by this court.

---

day of twenty-four hours beginning at mean midnight," *Webster's Third New International Dictionary of the English Language,* (Merrian Webster, Inc. ed.1981), and songstresses, *e.g.,* "What a difference a day makes—twenty-four little hours." *Dinah Washington, What A Difference A Day Makes* (Mercury Records 1959).

We conclude that the term "day" as used in *N.J.S.A.* 17:16D–13 is a full twenty-four hour day and the policy was in effect at the time of plaintiff's accident.

Affirmed.