■ In the Matter of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, v GRACY N. THOMAS, Respondent, and SCHOOLMAN TRANSPORT SYSTEM, INC., et al., Respondents-Respondents. [906 NYS2d 291]—

In a proceeding pursuant to CPLR article 75 to permanently stay arbitration of a claim for uninsured motorist benefits, the petitioner appeals from an order of the Supreme Court, Suffolk County (Cohalan, J.), dated June 10, 2009, which, after a framed-issue hearing, denied the petition and dismissed the proceeding.

Ordered that the order is affirmed, with one bill of costs to the respondents-respondents appearing separately and filing separate briefs.

On August 27, 2005, Gracy N. Thomas was a passenger in a bus operated by Schoolman Transport System, Inc. (hereinafter Schoolman), which was insured by National Interstate Insurance Company (hereinafter National Interstate). The bus was traveling on the Garden State Parkway in New Jersey when it was struck by a vehicle, alleged to be uninsured, driven by Lawrence Dock.

Thomas had a policy of insurance with the petitioner, and served a demand for arbitration based on the occurrence of this accident. The petitioner commenced this proceeding to permanently stay arbitration. The petitioner claimed that the respondents failed to establish that Dock's vehicle was uninsured. In this regard, it is undisputed that, at one point, Mercury Indemnity Company of America (hereinafter Mercury) issued a policy of insurance to Dock. However, by notice of cancellation dated August 8, 2005, Mercury provided notice to Dock that it was canceling the policy for nonpayment of premiums, purportedly effective August 23, 2005. The petitioner also claimed that, because Thomas was a passenger on the bus insured by National Interstate, National Interstate had primary uninsured motorist coverage, and the petitioner was not liable for such coverage until National Interstate had exhausted its policy limits, and then "only to the extent that it exceeds the coverage of a higher priority policy."

The Supreme Court denied the petition, finding that the evi-

dence established that Dock's vehicle was uninsured at the time of the accident. The Supreme Court did not determine the merits of the petitioner's argument concerning the priority of the policies.

Contrary to the petitioner's contention, the evidence established that Dock's vehicle was uninsured at the time of the accident. The relevant New Jersey statute, applicable to the issue of cancellation of Dock's policy because this case involves an automobile insurance policy issued to a New Jersey resident pursuant to a New Jersey statute to cover a vehicle registered and insured in New Jersey (*see Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.], 81 NY2d 219, 227 [1993]; Matter of Eagle Ins. Co. v Singletary, 279 AD2d 56 [2000]*), provides, in part: "No notice of cancellation of a policy to which section 2 applies shall be effective unless mailed or delivered by the insurer to the named insured at least 20 days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least 15 days' notice of cancellation accompanied by the reason therefor shall be given." (NJ Stat Ann § 17:29C-8.) It is undisputed that Mercury mailed a notice of cancellation to Dock based on nonpayment of premiums on August 8, 2005. The petitioner is correct in stating that, in computing the 15-day notice period, the first day to be counted was the day after Mercury mailed the notice (*see* NJ Rules of Ct rule 1:3-1; *see also Fiduccia v Intercontinental Restauranteurs, Inc.*, 310 NJ Super 52, 55, 707 A2d 1367, 1368-1369 [1998]). The petitioner is also correct in stating that, while the notice of cancellation indicates that cancellation would be effective as of 12:01 A.M. on August 23, 2005, this would only constitute a portion of the 15th day, and the New Jersey courts have determined that, with regard to computation of time, where computation of a specified number of days is involved, the term "day" refers to a full 24-hour day, and not a portion thereof (*see Fiduccia v Intercontinental Restauranteurs, Inc.*, 310 NJ Super 52, 707 A2d 1367 [1998]). Thus, as the petitioner argues, Mercury's notice of cancellation with a purported effective date of cancellation of less than 15 full days from the date of mailing failed to comply with the statutorily mandated 15-day notice period (*see* NJ Stat Ann § 17:29C-8). However, the petitioner is incorrect as to the consequences of this error. The effect was not to render the cancellation a nullity, in effect continuing the policy in perpetuity regardless of the insured's nonpayment of premiums or lack of communication between insurer and insured. Rather, the effect was simply that the cancellation was effective the following day, August 24, 2005, by which time the full 15-day period had elapsed and Dock had not

paid the premium (*see Fiduccia v Intercontinental Restauranteurs, Inc.*, 310 NJ Super 52, 707 A2d 1367 [1998]; *see also Kovacs v Kunick*, 2005 WL 4655384, *8, 2005 US Dist LEXIS 43225, *26 [ED NY 2005]). Thus, the policy was effectively cancelled three, rather than four, days prior to the accident, and, as the Supreme Court properly found, Dock's vehicle was, indeed, uninsured at the time thereof.

The Supreme Court incorrectly concluded that the petitioner's contention that National Interstate's policy was higher in priority than the petitioner's policy was, inter alia, "not applicable." In light of the Supreme Court's conclusion that the Dock vehicle was uninsured, a determination as to the priority of the insurance policies at issue was required. Because both New Jersey and New York law would resolve this issue on the basis of the language in the applicable policies (*see BP A.C. Corp. v One Beacon Ins. Group*, 8 NY3d 708, 716 [2007]; *Magnifico v Rutgers Cas. Ins. Co.*, 153 NJ 406, 710 A2d 412 [1998]), there is no conflict of laws on this issue.

A provision of the petitioner's SUM endorsement in its policy with Thomas pertaining to priority of coverage indicated that, where an insured was entitled to SUM coverage under more than one policy, the order of priority was to be:

"(a) A policy covering a motor vehicle occupied by the injured person at the time of the accident;

"(b) A policy covering a motor vehicle not involved in the accident under which the injured person is a named *insured*; and

"(c) A policy covering a motor vehicle not involved in the accident under which the injured person is an *insured* other than a named *insured*." (Emphasis supplied.)

Coverage under a lower priority policy was to apply "only to the extent that it exceeds the coverage of a higher priority policy." Here, Schoolman's policy with National Interstate covered the vehicle occupied by Thomas at the time of the accident. The petitioner's policy with Thomas covered a motor vehicle not involved in the accident under which Thomas was a named insured. Thus, under the terms of the petitioner's policy, National Interstate's policy was higher in priority than the petitioner's.

Meanwhile, Schoolman's policy with National Interstate contained a provision which stated, in part, "*Other Insurance.* With respect to bodily injury to an insured while occupying a motor vehicle *not owned by the named insured*, the coverage under this UM endorsement shall apply only as excess insurance over any other similar insurance available to such insured

and applicable to such motor vehicle as primary insurance, and this UM endorsement shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance." (Emphasis supplied.) Here, Schoolman, National Interstate's insured, owned the bus in which Thomas was a passenger when it collided with the Dock vehicle. Thus, this "Other Insurance" policy provision, on which National Interstate relies in support of its contention that the petitioner's policy is higher in priority, was, by its terms, inapplicable to the circumstances presented here (*see Matter of Lancer Ins. Co. v Robayo*, 28 AD3d 664, 665 [2006]).

Accordingly, National Interstate's policy constituted the primary insurance policy for all coverage, and Thomas may resort to the petitioner's policy only in the event that National Interstate's policy is insufficient to fully compensate her, and then "only to the extent that it exceeds the coverage of a higher priority policy."

The remaining contention of Mercury, Schoolman, and National Interstate is without merit. Fisher, J.P., Dillon, Dickerson and Eng, JJ., concur.