NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0110-15T1

TROOPER BRETT BLOOM
(BADGE NO. 5239),

 Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
NEW JERSEY STATE POLICE, THE
OFFICE OF THE ATTORNEY GENERAL
OF THE STATE OF NEW JERSEY,
SERGEANT ROBERT COWDEN, LIEUTENANT
JAMES RYAN, CAPTAIN JOHN FLYNN, and
MAJOR MARSHALL CRADOCK,1

 Defendants-Respondents.
_______________________________________

 Submitted May 2, 2017 – Decided August 2, 2017

 Before Judges Fasciale and Sapp-Peterson.

 On appeal from the Superior Court of New
 Jersey, Law Division, Mercer County, Docket
 No. L-542-12.

 Daggett & Kraemer, attorneys for appellant
 (George T. Daggett, on the brief).

1
 Major Marshall Cradock was incorrectly designated as "Major
Craddock" in the record.
 Christopher S. Porrino, Attorney General,
 attorney for respondents (Lisa A. Puglisi,
 Assistant Attorney General, of counsel and on
 the brief; Gregory R. Bueno, Deputy Attorney
 General, on the brief).

PER CURIAM

 Plaintiff, Brett Bloom (Bloom), a member of the New Jersey

Division of State Police (Division), appeals from the August 7,

2015 order granting summary judgment, and dismissing with

prejudice, his complaint against defendants, the State of New

Jersey, the Division, Detective Sergeant Robert Cowden (Cowden),

Lieutenant James Ryan (Ryan), Captain John Flynn (Flynn), and

Major Marshall Cradock (Cradock) (collectively referred to as

defendants). In his complaint, Bloom raised two separate causes

of actions under the New Jersey Conscientious Employee Protection

Act ("CEPA"), N.J.S.A. 34:19-1 to -14, alleging that his superiors

subjected him to harassment and retaliation. Bloom additionally

asserted a claim that defendants violated his right to petition

guaranteed under the First Amendment to the United States

Constitution, U.S. Const. amend. I, and Article I of the New Jersey

Constitution, N.J. Const. art. I, ¶¶ 6 and 18 (Petition Clause)

(Count Three). Finally, in Count Four Bloom alleged that there

 2 A-0110-15T1
had been "a systematic endeavor by the [Division] to cover up the

actions of Defendant Cowden."2

 In granting summary judgment, the motion judge concluded that

all but one of the facts asserted in Count One, Bloom's retaliatory

transfer in April 2011, were barred by the statute of limitations;

and the remaining 2011 retaliatory transfer claim, as well as the

retaliatory transfer claim in Count Two failed to raise genuinely

disputed issues of fact sufficient to withstand summary judgment.

With regard to the Petition Clause claim in Count Three, the motion

judge granted the motion because Bloom failed to offer any

opposition to the motion.3

 I.

 We recite the facts found in the summary judgment record,

which we view in a light most favorable to plaintiff. Robinson

v. Vivirito, 217 N.J. 199, 203 (2014); Brill v. Guardian Life Ins.

Co. of Am., 142 N.J. 520, 540 (1995). Bloom graduated from the

115th class of the State Police Academy. He served in the

2
 Bloom failed to address Count Four of the complaint in the summary
judgment motion and has not briefed this count in his appeal. We
therefore consider the claim asserted in this count as abandoned.
See McGarry v. Saint Anthony of Padua Roman Catholic Church, 307
N.J. Super. 525, 531, 537 (App. Div. 1998) (deeming particular
count of complaint not briefed on appeal as abandoned).
3
 Although the judge's oral decision makes no reference to Count
Four, the order granting summary judgment dismissed the complaint,
with prejudice, in its entirety.

 3 A-0110-15T1
Ballistics Unit (BU) from June 2005 until his reassignment to the

Firearms Investigation Unit (FIU). He also served an eight-month

detachment to the Business Integrity Unity (BIU) in 2012.

 The facts giving rise to the complaint first unfolded on

September 5, 2007. On that date, Cowden presented plaintiff with

a ballistics report, which he wanted Bloom to "peer review,"

meaning, to verify Cowden's findings. Bloom had not worked on the

particular examination, but was aware that at least one other co-

worker had reviewed Cowden's findings and disagreed with the

conclusions Cowden reached. Bloom did not feel comfortable signing

off on the report and refused to peer-review it. Although Bloom

did not believe Cowden's actions violated any particular law or

standard operating procedure, he considered Cowden's actions to

be "an ethical violation." He also believed Cowden's actions

amounted to falsification of evidence. He reported the incident

to a superior, Lieutenant James Storey, but he did not file a

report.

 Shortly thereafter, following several confrontations with

other members of the BU, Cowden was transferred to another unit,

but returned in 2010 as its assistant head under Ryan, who headed

the BU. Upon Cowden's return, he started to verbally harass and

subject Bloom to a hostile working environment. Specific incidents

of harassment Bloom alleged occurred throughout the first part of

 4 A-0110-15T1
2010 included Ryan ordering him to speak to a BU employee about

the use of sick time and overtime; Ryan changing his work schedule,

despite the fact the schedule had been approved one year earlier;

no longer serving as a lecturer and instructor on behalf of the

Division; and, having to turn over his newer vehicle to Cowden.

In addition, when Bloom turned over the vehicle, Cowden verbally

attacked him for failing to report a scratch on the vehicle,

leaving a window partially opened, and having the gas card in his

pocket.

 In June 2011, Bloom took administrative leave, which he

alleged was caused by the harassing and hostile work environment

engineered by Cowden and Ryan. Upon his return in April 2011,

Cradock transferred him from the BU to the FIU.

 On June 6, 2012, Bloom reported to his superiors that the

Division was violating federal statutes because it was not

registering all machine guns and other destructive devices with

the federal government. On June 30, 2012, he was transferred from

the FIU to the BIU, where he remained for eight months before

returning to the FIU at his request.

 On March 2, 2012, Bloom filed a one-count complaint alleging

that he had been subjected to a pattern of harassment and

retaliation after reporting that Cowden attempted to fabricate

evidence (Count One). Bloom filed an amended complaint adding a

 5 A-0110-15T1
second count, in which he alleged that he was transferred from FIU

in June 2012, without notice and without cause, in retaliation for

his complaint that the Division was violating federal law (Count

Two). Finally, in a second amended complaint, Bloom added two

more counts, one alleging that defendants violated his right of

petition guaranteed under the Petition Clause (Count Three) and

another alleging that there had been "a systematic endeavor by the

[Division] to cover up the actions of Defendant Cowden" (Count

Four).

 Upon completion of discovery, defendants moved for summary

judgment. Defendants argued that all but one of the retaliatory

acts alleged in Count One were barred by the statute of

limitations. On the merits, with regard to the remaining claims,

defendants urged that plaintiff failed to establish a prima facie

case of retaliation under CEPA or violation of the Petition

Clause.

 Addressing Count One, the court granted the motion finding

that, other than the retaliatory transfer, the claims set forth

in this count were barred by the statute of limitations. The

court also found that even if the claims were not statutorily

barred, the purported retaliatory pre-transfer actions about which

Bloom complained, "cumulatively or otherwise," had not impacted

the terms and conditions of his employment. Turning to Bloom's

 6 A-0110-15T1
transfer from the BU to the FIU in 2011, the court found that

there was a disputed fact as to whether the transfer rose to the

level of an adverse employment action, but concluded summary

judgment was nonetheless appropriate because Bloom failed to

establish a causal connection between his objection to peer-

reviewing Cowden's ballistics report and his transfer from the BU

to the FIU in 2011.

 The court next focused upon the 2012 action resulting in

Bloom's transfer from the FIU to the BIU, after he reported the

Division was violating federal law in connection with its firearms

registration requirements. The court found that while there was

a factual dispute as to whether the transfer constituted an adverse

employment action, it could not find a causal connection between

Bloom's complaint and the transfer. The court reasoned that

"giving all inferences for the plaintiff once again," the

articulated reasons for the transfer were "unassailable" and there

was nothing in the record other than Bloom's "own unsupported

allegations with respect to the reasons for the transfer."

 Finally, the court addressed the Petition Clause allegation

contained in the third count. The court noted "there was really

no opposition to the [P]etition[] [C]lause."

 7 A-0110-15T1
 II.

 Appellate courts review orders granting summary judgment de

novo, employing the same standard utilized by trial courts. Qian

v. Toll Bros., Inc., 223 N.J. 124, 134-35 (2015). Summary judgment

is granted "if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact challenged and that the moving party is entitled to

a judgment or order as a matter of law." R. 4:46-2(c). An issue

of fact is only genuine "if, considering the burden of persuasion

at trial, the evidence submitted by the parties on the motion,

together with all legitimate inferences therefrom favoring the

non-moving party, would require submission of the issue to the

trier of fact." Ibid. Further, appellate courts review questions

of law de novo and the legal determinations of the trial court are

not entitled to any special deference. Gere v. Louis, 209 N.J.

486, 499 (2012); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,

140 N.J. 366, 378 (1995).

 CEPA was enacted to eliminate "vindictive employment

practices[.]" Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J.

405, 418 (1994). CEPA has been construed to place the onus of

compliance upon employers because they "are best situated to avoid

or eliminate impermissible vindictive employment practices, to

 8 A-0110-15T1
implement corrective measures, and to adopt and enforce employment

policies that will serve to achieve the salutary purposes of

[CEPA]." Ibid.

 CEPA prohibits employers from taking "any retaliatory action"

against an employee who:

 a. Discloses, or threatens to disclose to a
 supervisor or to a public body an activity,
 policy or practice of the employer, or another
 employer, with whom there is a business
 relationship, that the employee reasonably
 believes:

 (1) is in violation of a law, or a rule
 or regulation promulgated pursuant to law
 . . . ; or

 (2) is fraudulent or criminal . . . ;

 b. Provides information to, or testifies
 before, any public body conducting an
 investigation, hearing or inquiry into any
 violation of law, or a rule or regulation
 promulgated pursuant to law by the employer
 . . . ; or

 c. Objects to, or refuses to participate in
 any activity, policy or practice which the
 employee reasonably believes:

 (1) is in violation of a law, or a rule
 or regulation promulgated pursuant to law
 . . . ;

 (2) is fraudulent or criminal . . . ; or

 (3) is incompatible with a clear mandate
 of public policy concerning the public
 health, safety or welfare or protection
 of the environment.

 9 A-0110-15T1
 [N.J.S.A. 34:19-3.]4

 CEPA defines retaliation as "the discharge, suspension or

demotion of an employee, or other adverse employment action taken

against an employee in the terms and conditions of employment."

N.J.S.A. 34:19-2(e). However, as our Supreme Court clarified,

"the universe of possible retaliatory actions under CEPA is greater

than discharge, suspension, and demotion," as evidenced by the

statute's express inclusion of "other adverse employment action

taken against an employee in the terms and conditions of

employment." Donelson v. Dupont Chambers Works, 206 N.J. 243, 257

(2011) (quoting N.J.S.A. 34:19-2(e)).

 An act of retaliation also need not be a single discrete

event. Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448

(2003). Instead, an employee may point to "many separate but

relatively minor instances of behavior directed against an

employee that may not be actionable individually but that combine

to make up a pattern of retaliatory conduct." Ibid. Accord

Beasley v. Passaic Cty., 377 N.J. Super. 585, 608-09 (App. Div.

2005). Ultimately, the question of whether an employer's action

constitutes retaliation "must be viewed in light of the broad

4
 Bloom cites to only N.J.S.A. 34:19-3(c).

 10 A-0110-15T1
remedial purpose of CEPA . . . ." Donelson, supra, 206 N.J. at

257.

 To establish a prima facie claim under CEPA, a plaintiff must

prove each of the following:

 (1) he or she reasonably believed that his or
 her employer's conduct was violating either a
 law, rule, or regulation promulgated pursuant
 to law, or a clear mandate of public policy;

 (2) he or she performed a "whistle-blowing"
 activity described in N.J.S.A. 34:19-3(c);

 (3) an adverse employment action was taken
 against him or her; and

 (4) a causal connection exists between the
 whistle-blowing activity and the adverse
 employment action.

 [Lippman v. Ethicon, Inc., 222 N.J. 362, 380
 (2015) (citing Dzwonar v. McDevitt, 177 N.J.
 451, 462 (2003)).]

 If a plaintiff makes this threshold showing, the burden shifts

to the defendant to set forth a legitimate non-retaliatory reason

for the adverse action. Klein v. Univ. of Med. & Dentistry of

N.J., 377 N.J. Super. 28, 38 (App. Div.), certif. denied, 185 N.J.

39 (2005). "If such reasons are proffered, plaintiff must then

raise a genuine issue of material fact that the employer's

proffered explanation is pretextual." Id. at 39 (citing Bowles

v. City of Camden, 993 F. Supp. 255, 262 (D.N.J. 1998), Kolb v.

Burns, 320 N.J. Super. 467, 479 (App. Div. 1999)).

 11 A-0110-15T1
 The statute of limitations for filing a CEPA action is one

year. N.J.S.A. 34:19-5. An employee's CEPA claim accrues on the

date the adverse action occurs. Villalobos v. Fava, 342 N.J.

Super. 38, 50 (App. Div.), certif. denied, 170 N.J. 210 (2001).

"A plaintiff need not know with certainty that there is a factual

basis for a claim under CEPA for the one year limitation period

to be triggered; it is sufficient that he should have discovered

that he may have a basis for a claim." Id. at 49 (emphasis

omitted).

 In Villalobos, the plaintiff was twice transferred "for the

good of the . . . [o]ffice" and resigned. Id. at 42-43. The

plaintiff later received information that the transfers were an

attempt to force his resignation and sued for constructive

discharge. Id. at 43-44. On appeal, we held that the plaintiff's

claim was barred by the statute of limitations, which started to

run on the date of his resignation and that he should have

discovered his CEPA claim before he received the additional

information regarding his transfers. Id. at 49-50.

 We now apply these principles to the facts of this case. We

first address the dismissal of Bloom's pre-transfer claims as

time-barred. Bloom alleges that when he refused to peer review

Cowden's ballistics report in 2007, he was later subjected to a

 12 A-0110-15T1
harassing and hostile work environment, after Cowden returned to

the BIU in 2010.

 We assume, for purposes of viewing the evidence most favorably

towards Bloom, that Cowden harbored a retaliatory animus towards

him, which Cowden continued to hold upon his return to the BU in

2010, as its assistant head. We further assume that upon Cowden's

return, he and Ryan put into motion the harassing and retaliatory

actions about which Bloom complains led to his leave of absence

in June 2010.

 The retaliatory acts he identified as occurring between

January 2010 and June 2010, all occurred nearly two years before

Bloom filed his complaint and are thus time barred. N.J.S.A.

34:19-5. Because those actions are time barred it is unnecessary

to address whether any of the acts are deemed retaliatory within

the meaning of CEPA. Falco v. Cmty. Med. Ctr., 296 N.J. Super.

298, 317-18 (App. Div. 1997) (declining to engage in "any

additional evaluation of [the] plaintiff's CEPA claim" because

"the motion judge correctly determined that [the] plaintiff was

not a whistleblower under CEPA"), certif. denied, 153 N.J. 405

(1998).

 We turn now to Bloom's transfer in 2011. The motion judge

found that the claim was timely filed, there were genuinely

disputed issues of fact as to whether Bloom engaged in

 13 A-0110-15T1
whistleblowing activity and also that it was genuinely disputed

whether his transfer from the BU to the FIU was an adverse

employment action. The motion judge nonetheless concluded summary

judgment was warranted because there was no evidence in the record

establishing a causal connection between the 2007 incident and

Bloom's transfer in 2011, and because the reasons given for Bloom's

transfer were "unassailable."

 The requirement that an employee who brings a CEPA action

must show a causal connection between his or her protected activity

and the alleged adverse employment action "can be satisfied by

inferences that the trier of fact may reasonably draw based on

circumstances surrounding the employment...action[.]" Maimone v.

Atlantic City, 188 N.J. 221, 237 (2006). The temporal proximity

between protected conduct and an adverse employment action "is one

circumstance that may support an inference of a causal connection."

Ibid. Here, temporally, Bloom's first transfer occurred more than

three years after the 2007 incident with Cowden. Hence, there is

no temporal proximity from which to draw an inference of

retaliation. Ibid.

 We note that although temporal proximity to an adverse

employment action is only one circumstance from which an inference

of retaliatory action under CEPA may be established, ibid., it "is

[not] the only circumstance that justifies an inference of causal

 14 A-0110-15T1
connection." Romano v. Brown & Williamson Tobacco Corp., 284 N.J.

Super. 543, 550 (App. Div. 1995). The record here, however, is

devoid of any facts from which a trier of fact could reasonably

conclude that there was a causal connection between the 2007

incident and Bloom's transfer in 2011.

 Defendants put forth their articulated reasons for Bloom's

reassignment. The record revealed that prior to his actual return

to work in April 2011, Bloom met with Cradock, where he expressed

that he wanted Cowden removed because Cowden "had been involved

in numerous confrontations with other individuals, including

[himself]" and believed "that it would be a natural progression

for [Cowden] to be removed and not [him]." He made clear to

Cradock and others that he did not want to return to the BU as

long as Cowden was there.

 Cradock, in his deposition, testified that internal

investigations failed to disclose any wrongdoing on the part of

Cowden. He explained the investigation revealed that Cowden's

management style was decidedly different than his predecessor.

Cradock testified that Cowden's style of supervision held

"everybody to task." He characterized the BU environment before

Cowden's return as "relaxed and laissez faire." He was aware that

Bloom could not work with Cowden, and made the decision that

Bloom's return to the BU was not an option at that time and that

 15 A-0110-15T1
he was not going to remove Cowden from BU based solely upon Bloom's

accusations. He told Bloom that if the investigation revealed

wrongdoing on Cowden's part, he would take appropriate action at

that time. He offered Bloom five choices for assignment, but

Bloom told him that he would rather remain out on administrative

leave.

 Thus, while the unworkable relationship between Cowden and

Bloom was the reason Cradock told Bloom returning to the BU was

not an option at that time, there was no evidence in the record

that Cradock's decision was tied to the 2007 incident. The fact

that Cowden was essentially still inextricably linked to Bloom,

insofar as Bloom's desire to remain in the BU was concerned, does

not raise an inference that the transfer was effectuated because

of the 2007 incident.

 Moreover, even if the intervening instances of harassment to

which Bloom claims he was subjected when Cowden returned to the

BU in 2010 are viewed as evidential, these incidents do not raise

a disputed issue of fact that the stated reason for his 2011

transfer was false. For example, Ryan directed him to speak to

an employee about the use of sick time. Bloom served as this

employee's training officer. There is nothing to suggest that it

was inappropriate for him to speak to the employee about sick time

or, that there was no real issue about the employee's use of sick

 16 A-0110-15T1
time and directing Bloom to speak to her was merely a pretext to

retaliate against Bloom for the 2007 incident.

 Similarly, while it is undisputed that Ryan changed his work

schedule because he believed Bloom had unilaterally set the hours,

it is also undisputed that Ryan reinstated Bloom's schedule after

learning the schedule had been approved by a captain. Further,

although Bloom complained about inappropriate language directed

at him within the workplace, he himself acknowledged that he too

used inappropriate language in the workplace, admittedly referring

to himself as "a pussy." Additionally, at the time Bloom was

asked to turn over his newer vehicle to Cowden, who was his

superior, Bloom was going on administrative leave. He was also

provided another vehicle.

 Finally, in addition to Bloom making it clear that he did not

want to return to the BU as long as Cowden remained assigned to

the unit and Cradock's management decision not to remove Cowden

in the absence of evidence of misconduct, both the Division's

physician and Bloom's therapist recommended that Bloom not be

assigned to the same unit as Cowden because of the personality

conflicts between the two men. There is no evidence in the record

that Cradock's assignment decision or the recommendations of the

Division's physician and Bloom's therapist were in any way linked

to Bloom's 2007 refusal to peer review Cowden's report.

 17 A-0110-15T1
 Thus, Defendants articulated a legitimate non-retaliatory

reason for Bloom's transfer, namely, the personality conflicts

between Cowden and Bloom and the internal investigation disclosed

no evidence of wrongdoing on the part of Cowden. Therefore, any

presumption of a retaliatory transfer disappeared, with the burden

shifting back to Bloom, to present evidence raising a genuinely

disputed issue of fact that the articulated reasons for the

transfer were false and the real reason was retaliation because

he refused to peer review Cowden's report in 2007. Bloom presented

no evidence in this regard.

 In short, there were no genuinely disputed issues of fact

establishing a causal connection between the 2007 incident and

Bloom's 2011 transfer, and, as the motion judge observed,

defendants' articulated reasons for Bloom's transfer were

"unassailable." Thus, the motion judge properly granted summary

judgment dismissing Count One on the merits in its entirety.

 We turn to Bloom's June 6, 2012 report that the Division was

violating federal statutes by not registering all machine guns and

other destructive devices. Bloom contends, within weeks of

reporting this violation to his superior, that he was transferred

out of the FIU and into the BIU. According to Bloom, this transfer

occurred without notice or cause despite the fact that there were

members of his unit who had submitted papers seeking a transfer

 18 A-0110-15T1
out of the FIU. Bloom characterized the reassignment as a "lateral

move," and one that did not promote career advancement.

 Assuming that the true reason for the transfer was in

retaliation for his reporting violations of federal law, this

retaliatory action does not, as a matter of law, constitute an

adverse employment action. It is undisputed that the transfer was

not a demotion, a loss in status, a reduction in pay, any

diminution in job responsibilities, or an assignment to perform

menial tasks. See Mancini v. Township of Teaneck, 349 N.J. Super.

527, 564 (App. Div.), remanded, 174 N.J. 359, reaff'd, 354 N.J.

Super. 282 (App. Div. 2002).

 In addition, Bloom does not dispute that transfers within the

Division are discretionary and may occur with or without notice

and may also be accomplished irrespective of any request for a

transfer. Further, Bloom acknowledged that when transferred to

the BIU, he was given the title of "squad leader" and supervisory

responsibilities over fourteen civilian personnel. In contrast,

while assigned to the FIU, Bloom had supervisory responsibility

for two employees and no title as "squad leader."

 Consequently, the facts viewed most favorably toward Bloom

do not raise a genuinely disputed issue of fact that his transfer

from the FIU to the BIU in June 2012 was an adverse employment

action under CEPA. Merely because he disagreed or objected to the

 19 A-0110-15T1
Division's decision to transfer him and believed his skills were

better suited in the FIU or even the BU does not translate into

an adverse employment action. Ibid. (holding that an adverse

employment action does not occur simply because an employee is

unhappy). Consequently, the second count of Bloom's complaint was

properly dismissed.

 III.

 Finally, Bloom contends that the motion judge erred in

dismissing the Petition Clause claim set forth in Count Three.

Bloom argues this claim was a matter for the jury, specifically

noting that he had filed an Equal Employment Opportunity grievance.

Bloom urges that there are sufficient facts to infer that

defendants targeted him for an internal investigation after He

initiated the underlying civil lawsuit.

 Notably, Bloom offered no opposition before the motion court

below to defeat defendants' summary motion relative to the Petition

Clause claim. Ordinarily, absent extraordinary circumstances, we

will not entertain an argument presented for the first time on

appeal that was not presented to the trial court. 809-811

Washington St. Assocs. v. Grego, 253 N.J. Super. 34, 50 (App. Div.

1992). Bloom has not presented any extraordinary circumstances

in his appellate brief that would lead us to depart from this

general rule of appellate review. See ibid.

 20 A-0110-15T1
 Moreover, any consideration of the Petition Clause claim

would not, based upon the record, be based upon any competent

evidence Bloom submitted to defeat the motion as to that claim.

Paragraph 239 through paragraph 258 of defendants' "Statement of

Undisputed Material Facts," filed in support of their summary

judgment motion, addresses the Petition Clause claim. Bloom's

expressed opposition to these paragraphs in his "Response to

Defendant[s'] Statement of Material Facts," is limited to: "leaves

Defendants to their proofs"; "admits that the testimony was given";

or "denie[s]" the proffered undisputed fact. Further, in his

"Statement of Undisputed Material Facts," Bloom puts forth no

facts regarding the Petition Clause claim.

 Rule 4:46-5(a) provides, in pertinent part, that "[w]hen a

motion for summary judgment is made and supported as provided in

this rule, an adverse party may not rest upon the mere allegations

or denials of the pleading[.]" In other words, Bloom's mere

denials or statement that he leaves defendants' to their proofs

will not defeat the motion. G.D. v. Kenny, 205 N.J. 275, 304

(2011) (quoting Rule 4:46-5(a)). Thus, granting summary judgment

on this claim and dismissing Count Three was proper.

 21 A-0110-15T1
Affirmed.

 22 A-0110-15T1